# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | ) | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 18-cr-132 (TSC/GMH) |
| | ) | |
| **DIONISIO GARCIA,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, Dionisio Garcia, be detained pending trial pursuant to 18 U.S.C. § 3142. Defendant is charged by indictment with one count of conspiracy to import 500 grams or more of cocaine from a foreign country in violation of 21 U.S.C. § 963. The Court held a detention hearing on May 9, 2018. At the conclusion of that hearing and upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered Defendant held without bond. This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

At the detention hearing, the United States proceeded by proffer based on the indictment. The defense offered no contrary evidence on the merits of the offense, but did provide, also by proffer, additional information about the history and characteristics of Defendant. Accordingly, the Court makes the following findings of fact.

### A. The Charged Offense

On April 28, 2018, Customs and Border Patrol agents assigned to the Cincinnati facility of international shipping company DHL targeted a package sent from Colon, Panama, and addressed to "Dylan Boyce" at an apartment on Kansas Avenue in the northwestern quadrant of the District of Columbia. When agents opened the package, which, according to the shipping manifest, contained documents, they discovered approximately 962 grams of a white powdery substance that field-tested positive for cocaine.

Thereafter, on the morning of May 2, 2018, officers from Homeland Security Investigations, working with other law enforcement, conducted a controlled delivery of the package (from which the drugs had been replaced by a similar sham product) to the Kansas Avenue address. When no one answered the door at either of the apartments at the address, an undercover officer placed on the door of the apartment to which the package had been addressed a DHL tag indicating an attempted delivery and including a contact number. Later that day, the undercover officer received a call about the package from a person sounding like a Hispanic male, and the officer arranged to redeliver the package to the Kansas Avenue address. When he returned to that residence, Defendant was waiting for him in front, signed for the package using the name "Dilan," and took the package into the apartment to which it had been addressed. Approximately one minute later, officers observed Defendant leave the apartment through the back door, place the package into the trunk of a burgundy Honda Accord, and return to the apartment.

At approximately 3:30 p.m. that same day, law enforcement executed a search warrant at the apartment. After waiving his *Miranda* rights, Defendant admitted that he had received the package for another person who was supposed to pick the package up that evening. Defendant

2

was to receive $500 for his help. Defendant admitted that he expected the package would contain something illegal, perhaps Ecstasy, and also that he had previously accepted a similar package for the same person and received $300 as payment. In a search incident to Defendant's arrest, law enforcement found $1,185 in his pocket.

### B. Defendant's Characteristics and Criminal History

Defendant has no prior criminal history. He is a legal resident of the United States who has lived in the D.C.-area for twenty-one years. He resides with his girlfriend of eight years in Maryland and has two sons in the area. Although he has not had steady employment for the past five months, Defendant asserts that prior to that he was gainfully employed for approximately twenty-one years, most recently serving as an auto mechanic at a single establishment for fifteen years.

## LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2). Where the

justification for detention is risk of flight, the decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

Section 3142 imposes a rebuttable presumption of dangerousness or flight risk on certain defendants based on the crimes with which they are charged, their prior convictions, or similar considerations. *See* 18 U.S.C. § 3142(e)(2), (3). For purposes of determining whether a rebuttable presumption is triggered, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Smith,* 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community."). Here, Defendant was indicted under 21 U.S.C. § 963 for conspiracy to distribute at least 500 grams of cocaine, an offense for which the maximum term of imprisonment is more than ten years. This offense triggers the rebuttable presumption of section 3142(e)(3)(A), which provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure [(1)] the appearance of the person as required and [(2)] the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A).

Once the rebuttable presumption is triggered, it "operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). As this Court has emphasized, "[w]hile the burden of production may not be heavy, the applicable cases all speak

in terms of a defendant's obligation to introduce 'evidence.'" *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. July 1, 2016) (citations omitted). Thus, the defendant must offer not mere speculation, but "at least some evidence," or basis to conclude that the presumption has been rebutted in his or her case. *Stone*, 608 F.3d at 945–46; *Alatishe*, 768 F. 2d at 371; *see also United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). Specifically, a defendant "should 'present all the special features of his case' that take it outside 'the congressional paradigm'" giving rise to the presumption. *Stone*, 608 F.3d at 946 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Portes,* 786 F.2d 758, 764 (7th Cir. 1985) (presumptions in section 3142(e) "are 'rebutted' when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released").

That said, the burden of persuasion on the issue of detention remains, as always, with the government. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). But even where the defendant offers evidence to rebut the presumption, the presumption is not erased. It is "not a 'bursting bubble' that becomes devoid of all force once a defendant has met his burden of production." *Taylor*, 2018 WL 272748, at *4 (quoting *Jessup*, 757 F.2d at 382). Rather, even after the defendant carries his burden of production, the presumption "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *Taylor*, 289 F. Supp. 3d at 63 ("[T]he judicial officer must 'keep in mind the fact that Congress has found that' those charged with the specified offenses are likely to pose a danger to the community." (quoting *Jessup*, 757 F.2d at 384)); *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011).

## ANALYSIS

A.  **Application of the Rebuttable Presumption**

Defendant concedes that the rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3)(A) applies here, but stresses that his strong ties to the community and his non-existent criminal history are sufficient to meet his burden of production to rebut it. Specifically, Defendant argues that he has been a legal resident of the D.C.-area for twenty-one years without acquiring a criminal record. He notes that the current charges reflect a single instance of receiving a package containing drugs, and there are no allegations of violence or possession of weapons. He has ties to the community, evidenced by his living situation, his two sons in the area, and the attendance of approximately fifteen friends at the detention hearing. Although he has not had steady employment for the past five months, Defendant asserts that prior to that he was gainfully employed for approximately twenty-one years, most recently serving as an auto mechanic at a single establishment for fifteen years. In lieu of pretrial detention, Defendant asks the Court to release him on conditions, including electronic monitoring and home detention.

This is a close case. Having heard the parties' proffers, the Court finds that Defendant has rebutted the presumption that he is a flight risk. Defendant is a legal resident who has lived in the area for more than two decades. He has ties to the community, including a girlfriend and two children, and has a history of gainful employment. However, Defendant has failed to produce at the hearing "some credible evidence contrary to the statutory presumption" of his dangerousness were he to be released. *Alatishe*, 768 F. 2d at 371.

Congress has determined that individuals who, like Defendant, have been charged with drug offenses carrying a maximum term of imprisonment of ten years or more presumptively pose

a danger to the community even if they do not have a criminal history. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (explaining that the presumption "represents Congress's general factual view about . . . the special risks of danger to the community presented by defendants who commit the crimes to which it attaches"). Moreover, the weight of the evidence is strong that Defendant conspired with another to import a significant amount of cocaine for distribution. He was discovered with the package containing almost one kilogram of cocaine and admitted to having engaged in a similar scheme on a prior occasion—although the contents of that package are presently unknown. "The distribution of large quantities of narcotics into the community poses a significant danger to communal safety." *United States v. Holroyd*, No. CR 17-234-2 (TNM), 2018 WL 294529, at *3 (D.D.C. Jan. 4, 2018). Given the manner in which Defendant received the drugs—by accepting a package mailed from Panama to a D.C.-area address—it would be difficult to fashion conditions of release that would prevent him from committing further similar offenses. Finally, the probative value of Defendant's evidence concerning his ties to the community and his previously law-abiding life is limited because "this evidence would equally tend to suggest that Defendant would never have committed the crime with which he is now charged." *United States v. Bess*, 678 F. Supp. 929, 935 (D.D.C. 1988) ("The history and characteristics of Defendant—his family and community ties, his educational and employment record, and his lack of prior convictions as an adult—did not deter him from committing armed robbery in the first instance . . . .").

**B.    Application of the Section 3142(g) Factors**

Had Defendant fully rebutted the presumption in favor of his detention, and the Court were to consider the Bail Reform Act's four section 3142(g) factors, it would again be a close call, but

the conclusion would ultimately be the same: Defendant should be held without bond pending trial. The four factors that must be considered in making a bond determination are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Further, where, as here, a rebuttable presumption applies, it "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)," even if the defendant has met his or her burden of production of offering some credible evidence to the contrary. *Dominguez*, 783 F.2d at 707; *Taylor*, 289 F. Supp. 3d at 63; *Ali*, 793 F. Supp. 2d at 391.

### 1. *Nature and Circumstances of the Charged Offense*

The first factor, the nature and circumstances of the charged offense, favors detention. This factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter, but points especially to instances where "the offense is a crime of violence . . . or involves a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, the indictment and the government's proffer establish probable cause to believe Defendant engaged in a drug trafficking offense involving cocaine in an amount that the grand jury found was consistent with intent to distribute the drug. Defendant's own statements indicate he expected that the package he received would include narcotics and that he had previously agreed to accept a package likely to contain narcotics for payment. Defendant was also found with over $1,000 cash in his pocket, notwithstanding the fact that he is currently unemployed. That is, the evidence indicates that Defendant was no unwilling dupe; he was a knowing participant in a drug conspiracy.

8

*2.     The Weight of the Evidence*

The weight of the evidence against Defendant is strong and also favors detention. As outlined above, law enforcement witnessed Defendant receive the package of drugs and put it in the trunk of a car from which it was later recovered. And Defendant admitted he believed that the package contained narcotics.

*3.     The History and Characteristics of Defendant*

Section 3142(g)(3) directs the Court to consider: (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. 18 U.S.C. § 3142(g)(3)(A)–(B).

This factor does not weigh strongly in favor of detention. As discussed above, Defendant has no prior criminal record, has lived in the community for over two decades, and has apparently strong ties to the community. To be sure, he has been unemployed for the past months, but his employment record prior to that period is steady. The primary counterweight to that history is the conduct for which he is charged, which Congress has found poses "special risks" to the community. *See Bess*, 678 F. Supp. at 934 (finding that presumption "represents Congress's general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches"). But although this factor may not firmly indicate that Defendant should be detained, it does not compensate for the other §

9

3142(g) factors, which do counsel in favor of detention.

    *4.  The Danger to the Community*

The fourth factor, the danger to the community posed by Defendant were he to be released, also weighs in favor of detention. There is probable cause to believe that defendant received nearly one kilogram of cocaine as part of a conspiracy to distribute the drug. The danger to the community posed by this conduct is discussed above and requires no further explanation here.

For these reasons, the Court does not have confidence that, if released, Defendant would not continue to engage in criminal activity. The undersigned therefore finds that there is no condition or combination of conditions that would keep the community safe if Defendant were released.

## CONCLUSION

Based on the consideration of all the evidence, the factors set forth in section 3142(g), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or of the community if Defendant was released. Therefore, the government's motion for pretrial detention is **GRANTED**.

## DIRECTIONS REGARDING DETENTION

Defendant is **ORDERED** remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government,

the person in charge of the corrections facility must deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: May 10, 2018

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE